# Brevard's Executors *v.* Jones.

### *Bill in Equity by Wife, against Judgment Creditors of Husband.*

1. *When wife may enjoin execution in favor of husband's creditors.* — When an execution against the husband is levied on property, real or personal, to which the wife has the legal title, she has an adequate remedy at law, and cannot resort to equity without showing special circumstances ; but, if her title is founded on a purchase at sheriff's sale under execution against her husband, issued on a chancery decree in her own favor, which would not be conclusive on a purchaser at a subsequent execution sale against him, and, in the event of a contest with such purchaser, the controversy would involve transactions between husband and wife, and rights of property, perhaps, only sustainable in equity, she may come into equity, to have her rights declared and established, and to enjoin the execution sale.

2. *Respective rights of husband and wife, at common law and by statute, in wife's lands, or proceeds of sale thereof.* — At common law, the husband acquired by the marriage a life estate in the wife's lands, as tenant by the curtesy, after issue born, and this was subject to the payment of his debts ; and if the land was sold by them, and thus converted into personalty, the money became his absolutely when collected. But, where such a sale and conversion of the wife's lands has been made since the passage of the several statutes securing to married women their separate estates, the money becomes a part of the wife's statutory separate estate,

[Brevard's Executors *v.* Jones.]

although the lands were acquired by her during the marriage, and before the passage of those laws.

3. *Wife's interest, under deed and law, in property conveyed by husband to trustee for her.* — The act of 1848, for the protection of the estates of married women, operates on property which was conveyed by the husband, in 1849, to a trustee, for the use and benefit of the wife for life, with remainder to their children, but not in any event to be subject to his debts or contracts; and protects her interest in every respect not protected by the deed.

4. *Removal of houses from wife's lands.* — Where buildings are removed from the wife's lands by the husband, and placed on adjacent lands belonging to himself, with the understanding between them that he is to erect in their stead buildings of greater value, this precludes the idea of a gift by the wife, and renders the husband liable for the damage done to her lands by the removal, on his failure to erect other buildings as contemplated.

5. *Construction of will, as to wife's interest in personalty.* — Where a testator directed his property to be kept together, under the management of his executors and his wife, until the majority or marriage of his eldest child, who was then to receive an equal portion according to the number of children living at that time, " allowing my wife Mary E. a child's part; " which portion was to be " the standard by which to distribute the personal property to the other children; " " provided that, in the event of the marriage of my wife after my death, then my personal property be equally divided between her and the children; " and devised the land on which he lived to his wife for life, with remainder to his children, — *held*, that the widow took an absolute estate, and not merely an estate for life, in her share of the personalty.

6. *Investment of wife's money in stock in incorporated mining company.* — Where the wife received money in 1854, which her husband used and appropriated, and repaid her the amount in 1867; and she then purchased, and paid for with these funds, stock in an incorporated mining company, for which her husband had previously subscribed, but had not paid, and took the certificate in her own name, — *held*, that this was a legitimate investment of the funds of her statutory separate estate.

7. *Restitution by husband, of rents and profits of wife's statutory separate estate used by him.* — Although the husband is not required to account to the wife, for the rents, income, and profits of her statutory separate estate, received by him and appropriated to his own use, yet he may account to her, and make restitution; and if he does so, the transaction cannot be impeached by his creditors as a voluntary conveyance, but is subject, so far as the question of fraud is involved, to the same rules which apply to transactions or conveyances between other persons.

8. *Execution on judgment after lapse of year and day.* — An execution on a judgment, issued after the lapse of a year and a day, without a revivor by *scire facias*, although forbidden by the statute (Rev. Code, § 2830), is not void, but voidable only at the option of the defendant, unless other persons have in the mean time acquired rights; and it is sufficient to sustain a sale, when collaterally assailed by another creditor of the defendant, although the plaintiff in execution was the wife of the defendant, and herself became the purchaser at the sale.

9. *Erasures and interlineations in execution by deputy clerk.* — Where an execution from the chancery court, not having been levied, was taken by the sheriff, after the return day had passed, to the office of the register in chancery; and the register's deputy, at the request of the sheriff, thereupon erased the name of the month to which the execution was returnable, and substituted the name of the next month; and this was done a second time, without any formal return of the execution being made in either instance, — *held*, that these alterations did not affect the validity of the execution, or of a sale made under it after the second alteration, when collaterally assailed.

10. *Return of execution from chancery court.* — An execution from the chancery court is required to be made returnable on the first Monday in some month (Rev. Code, § 3478), and the day must be specified in the writ; and if the day specified is beyond the next term of the court, this does not render the execution void.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 14th day of September,

[Brevard's Executors *v.* Jones.]

1869, by Mrs. Frances A. Jones, the wife of Dr. B. R. Jones, against the executors of the last will and testament of Ephraim Brevard, deceased ; and her said husband and their children were also joined as defendants. The object of the bill was to enjoin an execution in favor of said executors, which had been levied on certain property, real and personal, hereinafter more particularly described, as the property of Dr. B. R. Jones, and which the complainant claimed as her own ; and she also asked to have her title to the property declared, quieted, and established by the decree of the court. The property levied on consisted of certain lands in the county of Montgomery, together with an undivided half interest in a stock of drugs, medicines, &c., in a drug store in the city of Montgomery, conducted under the firm name of Jones & Cary ; and one hundred shares of stock in an incorporated company, chartered under the laws of this State, and styled the Red Mountain Iron and Coal Company.

The execution in favor of Brevard's executors was issued on a decree which they had obtained in the chancery court at Montgomery, on the 29th May, 1869, for about $50,000, against said B. R. Jones and another, as sureties on the administration bond of B. C. Jones, deceased, as ancillary administrator in this State of the property belonging to said Ephraim Brevard's estate. Ephraim Brevard was a resident of North Carolina, and died there in 1854 ; and his will was there admitted to probate, and the executors thereof duly qualified. As said Brevard left a large property in Alabama, ancillary administration on it was granted by the probate court of Montgomery county, in 1854, to said B. C. Jones, who was the brother of Dr. B. R. Jones, and who gave bond as such administrator, with said B. R. Jones and another as his sureties. In 1860, the executors filed their bill in the chancery court at Montgomery, against said B. C. Jones, to compel a settlement of his said administration ; and while this suit was pending, in 1866, said B. C. Jones died, wholly insolvent. In 1868, the suit was revived against his administrator, and the sureties on his bond were made defendants by amendment of the bill.

The complainant claimed the personal property in controversy as belonging to her statutory separate estate, having been purchased by her, or with her money, under the circumstances stated in detail in the briefs of counsel and the opinion of the court ; and she claimed the real estate under a purchase at sheriff's sale on the first Monday in June, 1869, under an execution in her own favor against her husband, issued on a decree for about $13,000, which she had obtained against him on the 6th January, 1867, in the chancery court of Montgomery. The suit in which that decree was rendered was instituted by Mrs. Jones in 1866, and sought to remove her hus-

band from the trusteeship of her separate estate, and to compel an account and settlement of what he had received; and the chancellor rendered a decree in her favor for the amount ascertained to be due from her husband under a reference to the register, and removed him as her trustee. The various items which entered into the decree, as ascertained by the register, and the material facts connected with each of them, are stated very fully in the briefs of the respective counsel, and in the opinion of the court, and need not be repeated here. Mrs. Jones and her husband were married in 1841, and one of the questions in this case was, what interest Mrs. Jones took under the will of her father, David M. Taliaferro, who died in 1826, and whose will was in the following words : —

"1st. It is my will that, out of the money arising from the sale of my present crop, that all my debts be paid. 2d. It is my will that my property remain together, in the possession of my wife, Mary Elizabeth Taliaferro, and subject to her management and control, together with that of my executors, until my oldest child becomes of age, or marries, or until the first marriage of my children ; at which time it is my wish, that my first child that comes of age, or marries, receive an equal portion thereof, agreeable to the number of children then living, allowing my wife, Mary Elizabeth, a child's part; and that this equal portion be the standard, by which to distribute my personal property to my other children, as they marry or become of age ; provided that, in the event of the marriage of my wife after my death, that then my personal property be equally divided between her and my children " (naming them), " share and share alike. 3d. I will and devise to my wife, Mary Elizabeth, during her life, the tract of land on which I now live ; and at her death, to be equally divided amongst my children or representatives. 4th. It is my will that out of the money that may be made on my plantation, over and above the maintenance of my family, and the education of my children, that my executors do purchase a good tract of land for my son, William Benjamin Taliaferro, to be worth not less than five thousand dollars. 5th. It is my will that my children be well educated under the direction and control of my wife, Mary Elizabeth, aided by the advice and control of my executors. 6th. I will to my son, William Benjamin, all my library of books. 7th. I do by this, my last will, authorize and empower my executors fully to transact all business that may relate to my worldly affairs, and, with the approbation and consent of my wife, to purchase or sell property for the use and benefit of my heirs, or their representatives." The remaining clause nominated his executors.

On final hearing, on pleadings and proof, the chancellor ren-

[Brevard's Executors v. Jones.]

dered a decree for the complainant; and his decree is now assigned as error.

WATTS & TROY and ELMORE & GUNTER, for appellants. — If the complainant's purchase at the sheriff's sale was void, this puts an end to her case, so far as the injunction against the defendants' execution is concerned. If the proceedings in the chancery court, in the suit instituted by her against her husband, are not supported by sufficient evidence to make them a valid conveyance of the property bought by her under the decree, her case must fail. If those proceedings were instituted and accomplished with the intent to hinder or defraud the creditors of her husband, by collusion between him and her, her case must fail. If she has a full, complete, and adequate remedy at law, as to any of the property levied on by the sheriff under the defendants' execution, her case must fail as to that property.

I. *The purchase at sheriff's sale was void.*

1. Executions from the chancery court, on all decrees for the collection of money, " shall have the force and effect of executions issued from the circuit courts, and shall be levied, collected, and returned in the same manner." Rev. Code, §§ 3479, 3480. The execution is the sheriff's power of attorney; and when it has become *functus officio*, all his acts, purporting to be done under it, are void. He cannot collect money so as to bind his sureties for it, or to satisfy the execution, after its return day. *Farmers' Bank* v. *Reid*, 3 Ala. 299, and authorities there cited; *Dean & Johnson* v. *Governor*, 13 Ala. 526; *Morgan* v. *Ramsey*, 15 Ala. 192. He cannot sell lands on the first day of the term to which the execution is returnable, although the levy was made before. *Smith* v. *Mundy*, 18 Ala. 182; *Sheppard* v. *Rhea*, at January term, 1873. The sale in this case was made on the first Monday in June, 1869, which was after the return day of the execution, even as altered the second time; and it was, consequently, void.

2. The execution was properly returnable, in law, to the next ensuing term of the chancery court of Montgomery, which was held, as this court must judicially know, on the second Monday in May; and the mistake of the clerk, in inserting a different day, cannot change its legal effect. *Yonge* v. *Broxson*, 23 Ala. 688; *Love* v. *McRae*, 12 Ala. 444; *Sampley* v. *Walker*, 9 Ala. 726; *Wafford* v. *Robinson*, 7 Ala. 489; *Harrell* v. *Martin, Pleasants & Co.* 4 Ala. 650. The statute embodied in section 3480 of the Revised Code was enacted after sections 3478–9, which are parts of the Code of 1853, and it must be construed as modifying them, and requiring executions from the chancery court, on decrees for money, to be returnable

to some regular term of the court, whenever the term is fixed by law. Such executions, if they have the force and effect of executions from the circuit courts, create liens on the defendant's property; and these liens can only be preserved by issuing the executions from term to term.

3. If the execution was properly made returnable to the first Monday in March, as specified on its face when issued, neither the register nor his deputy had any power to alter it; and such alteration did not have the effect of renewing it. The power thus to alter once, or twice, involves the power to alter for any number of times indefinitely, and would destroy all liens and other rights dependent upon the execution. The execution, when returned to the register, became a record of his court, and was beyond his power to amend or alter. *Woodward* v. *Harbin*, 1 Ala. 104; *Harrell* v. *Martin, Pleasants & Co.* 6 Ala. 587; *Pigat* v. *Davis*, 3 Hawks, 25. The cases of *Love* v. *Gates* (2 Iredell, 14), and *Lehr* v. *Rogers* (3 Sm. & Mar. 468), are strikingly similar to this, and made under similar statutes. The New York cases cited for the appellee, holding that executions from justices' courts may be renewed without a reissue, are based on the express words of a statute. That such renewals, but for the statute, would be void, see *Wickham* v. *Miller*, 12 Johns. 320; *Jackson* v. *Page*, 4 Wendell, 589; *Preston* v. *Leavitt*, 4 Wendell, 663. That executions issued as this was, in the absence of statutory provisions, are void, and sales under them are also void, see *Vail* v. *Lewis*, 4 Johns. 455; 5 Wendell, 276; *Bond* v. *Wilder*, 16 Vermont, 396; *Fifield* v. *Richardson*, 34 Vermont, 416; *Calhoun County* v. *Buck*, 27 Ill. 440; *White* v. *Jones*, 38 Ill. 164. That the execution ought to have been returned, and a new one issued, see *Brown & Milton* v. *Baker, Sprowls & Co.* 9 Porter, 503; *Hill* v. *Slaughter*, 7 Ala. As illustrating the same principle, though not directly like this case, see *Bybee* v. *Ashby*, 2 Gilman, 151; *Locky* v. *Labke*, 36 Missouri, 115; *Bank* v. *Brey*, 37 Missouri, 568.

II. *The proceedings in the case between the complainant and her husband, and the decree rendered in her favor, are not supported by the evidence, as against the appellants.*

1. The complainant's father, David M. Taliaferro, died in 1826, and the greater part of her claim is based on the construction of his will. Under this will, the property of the estate was to be kept together, and there was to be no full division and distribution until the death of the widow (unless she married again), and then only by implication of law. The widow took a life estate only, unless she married again; and the children took vested interests in all the property, real or personal, though the enjoyment of it, except for their support and educa-

[Brevard's Executors *v.* Jones.]

tion, was postponed until each attained majority or married; and at the death of the widow (unless she married again) the balance was to be distributed among them or their representatives.

2. The complainant and her husband were married in 1841, long before the passage of any of the " woman's laws." Her interest under her father's will accrued at his death, and all the accumulations which might result from the successful management of the plantation were but the accretions of the property then in existence, and are governed by the same law. So far as the marital rights of her husband are concerned, all of this property is governed by the common law, and is not affected by any of the provisions of " woman's laws " subsequently passed, whether received by her or her husband before or after the passage of those laws. *Kidd* v. *Montague*, 9 Ala. 6191; *Manning* v. *Manning*, 24 Ala. 386 ; *Hardy* v. *Boaz*, 29 Ala. 168 ; *Weathers* v. *Sterns*, 30 Ala. 712 ; *Anderson* v. *Anderson*, 37 Ala. 683.

3. At common law, the husband acquired by the marriage a life estate in the wife's lands, after issue born alive, which was such an interest as could be sold under execution at law against him ; and became entitled absolutely to all her personal property in possession, with the right to reduce to possession all her choses in action, whether legal or equitable. *Cheek* v. *Waldrum*, 25 Ala. 152 ; *Walker* v. *Fenner*, 28 Ala. 367 ; *Bishop* v. *Blair*, 36 Ala. 80 ; *Bell* v. *Bell*, 36 Ala. 466 ; *Nunn* v. *Givhan*, 45 Ala. 370 ; Shepherd's Digest, 656, § 75.

4. The proof clearly shows that the two slaves received by Mrs. Jones from her mother in 1855, Polly and Allen, were the increase of slaves belonging to her father's estate· at the time of his death. Her right to them, as a part of her share of his estate, accrued at his death, and not at the time they were delivered to her ; and as soon as they were delivered, they became the property of Dr. Jones, as much so as if he had bought and paid for them. The bill nowhere.alleges that Mrs. Taliaferro, the mother of Mrs. Jones, ever had any property or estate, separate from that which she received under her husband's will ; and it is proved in fact, on the part of the defendants, that she had no such estate. The money which Mrs. Jones received from her mother in 1849, and that which was retained by Dr. Jones as his wife's share on the final settlement of her mother's estate, were in fact and in law, not the property of her mother, but a part of her father's estate, and vested absolutely in Dr. Jones when received by him. And so of the house and lot claimed to have been given to Mrs. Jones by her mother in 1843–4; it must have been bought with the money of her father's estate, or the

accumulations from that source; and when sold, Dr. Jones did not become accountable to his wife for either the *corpus* or the interest.

5. The land sold to Mrs. Micou by the complainant and her husband was the property of the complainant, and her husband had a life estate in it; and when it was sold and conveyed by them jointly, the purchase-money, when received, vested absolutely in the husband as his own property. Clancy on H. & W. 164; *Bragg* v. *Massie*, 38 Ala. 89. If a promissory note had been taken for the purchase-money, and the husband had died without collecting it, the conversion of the land into personal property would not have been perfected, and the note would have survived to the wife, as against the husband's administrator. *Sessions* v. *Sessions*, 33 Ala. 522. This case recognizes the husband's right to the money collected, and the only controversy was as to the uncollected note. The provisions of the Code, as to the sale of property belonging to the wife, have nothing to do with the case, as they apply only to separate estates held under the law. *Willis* v. *Cadenhead*, 28 Ala. 472; *Hardy* v. *Boaz*, 29 Ala. 168; *Pickens* v. *Oliver*, 29 Ala. 528; *Cannon* v. *Turner*, 32 Ala. 483; *Huckabee* v. *Andrews*, 34 Ala. 646. The case of *Marsh* v. *Marsh*, 43 Ala. 677, was governed by these provisions, because the land accrued to the wife in 1849, after the passage of the first "woman's law."

6. The deed made by Dr. Jones to Mrs. Taliaferro, as trustee for his wife and children, created in Mrs. Jones a life estate to her sole and separate use, with remainder to their children. As to this property, he received the income and profits without any dissent on the part of his wife, and without any promise to refund or account for them. The law, then, presumes a gift of these rents and profits by the wife, and the husband was under no obligation to account to her for them. *Roper* v. *Roper*, 29 Ala. 247; *Huckabee* v. *Andrews*, 30 Ala. 143; *Dent* v. *Slough*, 40 Ala. 518. If the property is to be considered as held under the law, and not under the deed, then, by the express words of the statute, he was not accountable to her for the rents and profits. *Whitman* v. *Abernathy*, 33 Ala. 159; *Huckabee* v. *Andrews*, 30 Ala. 143.

7. The only remaining item of indebtedness, on which the complainant's decree against her husband is based, is for the alleged damages caused by the removal of the houses from the lot on the corner of Perry and Washington streets, in the city of Montgomery, to the adjoining lot then belonging to Dr. Jones. This removal was made with the assent of the complainant, and under a promise by Dr. Jones to erect better buildings in their stead; and the houses have been occupied as

[Brevard's Executors v. Jones.]

a residence by the family ever since their removal. Such a promise, made under such circumstances, and prevented from fulfilment by unforeseen accident, constitutes no cause of action in favor of the wife. There could be no trespass, because the removal was with the assent of the wife. 2 Kent, 131. If the promise was intended as a contract, it was void under the statute of frauds, and no court would enforce it. *Forward v. Armstead*, 12 Ala. 124 ; Brickell's Digest, 38, § 293.

III. *The decree was procured by collusion between husband and wife, and was intended to defraud the creditors of the husband.* It is clearly proved that Dr. Jones was insolvent in the summer of 1865, and that his wife was well aware of the fact. Dr. Jones employed the solicitors who filed the bill for his wife, and paid their fees. He made no defence to the suit, and allowed a decree to go against him, on insufficient evidence, for a large amount, which, as he must have known, he did not owe, and was under no obligation to pay. The statute places judgments and decrees, so far as the rights of creditors are concerned, on the same basis as conveyances. Rev. Code, § 1865. A conveyance by husband to wife, executed under the circumstances shown in this record, would be declared fraudulent and void as against creditors. *Pulliam, Wills, Rankin & Co.* v. *Newberry's Adm'r*, 41 Ala. 168, and authorities there cited ; *Anderson* v. *Hooks*, 9 Ala. 704 ; *Tatum* v. *Hunter & Thomas*, 14 Ala. 557 ; *Wiley, Banks & Co.* v. *Knight*, 27 Ala. 336 ; *Price* v. *Masterson*, 35 Ala. 483 ; *Heydon* v. *Hall, Moses & Roberts*, 41 Ala. 242. It must be remembered, in this connection, that no attempt was made to enforce the collection of this judgment, until there was danger that the property would be subjected to the payment of the defendants' debt ; showing that the decree was only intended to shield the property of Dr. Jones from the payment of his debts. The use made of a deed is a circumstance to show the intent with which it was executed.

IV. *As to the money invested in the drug store, and in the Red Mountain Iron and Coal Company.* The $6,000 given by Dr. Jones to his wife, in 1866, was his own money, as he himself swears ; and though he says he paid it to her for the use of her land and negroes, it was nevertheless, in fact and in law, a gift, since he owed her nothing on that account ; and he could not make a valid gift, as against the defendants in this case, who were existing creditors at that time. *McLemore* v. *Nuckols*, 37 Ala. 662.

V. *The complainant had a full, complete, and adequate remedy at law, and therefore her bill is without equity.* Before the defendants' execution was levied on the property in controversy, her husband had been removed from the trusteeship

[Brevard's Executors v. Jones.]

of her separate estate (whatever that was), and she had all the rights of a *feme sole* as to her property. As a *feme sole*, she certainly could not have maintained any suit in equity, on the facts alleged and· proved. No bill was ever entertained to quiet the title to personal property. She might have sued the sheriff for levying on the property; she could have brought trover, detinue, or trespass, or interposed a claim to try the right of property. As to this property, she has no standing in a court of equity. *Stone & Matthews* v. *Gazzam*, 46 Ala. 269; *Dent* v. *Slough*, 40 Ala. 518; *Wilkinson* v. *Cheatham*, 45 Ala. 337.

VI. *If the complainant's purchase was not void, her execution should be postponed to that of the defendants.* Her execution was certainly voidable, and her decree had become dormant by her laches in issuing executions on it; and no excuse is given for the delay. *Albertson, Douglass & Co.* v. *Goldsby*, 28 Ala. 711. Suppose the complainant had been a stranger to the defendant in execution, and had slept on his rights as she has done; had failed to sue out execution for two years, and allowed the defendant to receive the rents and profits of the property in the mean time, and only showed an effort at diligence when it became necessary to prevent another creditor from subjecting the property; would not his execution be postponed to that of the more diligent creditor, or at least credited with the rents and profits so received by the defendant?

STONE & CLOPTON, *contra.* — 1. The complainant's claim against her husband, on which her decree against him and her purchase at sheriff's sale are founded, consists of three kinds of property : 1st, the land received from her father's estate, and the house and lot given to her by her mother, in which Dr. Jones had a life estate as tenant by the curtesy, and which he sold, estimated at $4,500; 2d, the damage done to the lot conveyed by Dr. Jones to Mrs. Taliaferro, in trust for his wife and children, by the removal of the houses, estimated at $5,100; and, 3d, her statutory separate estate, — cash given her, $1,000; proceeds of sale of slaves Polly and Allen, $2,600; distributive share of Mrs. Taliaferro's estate on settlement, $1,198.44, — amounting to $4,298.44; aggregating $13,898.44, the amount of the decree. In the sale by the sheriff no discrimination was made. Some portion of each of these classes of debts entered into the purchase of each portion of the property sold, and the complainant holds the property, in equity and good conscience, by each of these titles. Her title, then, is partly legal, and partly equitable; and it presents a clear case for equitable interposition, based on the

[Brevard's Executors *v.* Jones.]

inadequacy of any remedy at law. Rev. Code, § 698 ; *Lewen* v. *Stone*, 3 Ala. 485 ; *Calhoun* v. *Cozens*, 3 Ala. 498 ; *Gould* v. *Hill*, 18 Ala. 84 ; *Bridges* v. *Phillips*, 25 Ala. 136 ; *Williams* v. *Maull*, 20 Ala. 721.

2. Equity will interpose to remove a cloud from the title, and even to prevent a cloud from being cast over the title, in a case like this. *Martin* v. *Hewitt*, 44 Ala. 419 ; *Barclay* v. *Henderson*, 44 Ala. 269 ; *Downing* v. *Mann*, 43 Ala. 266 ; *Burt* v. *Cassety*, 12 Ala. 734 ; *Lyon* v. *Hunt*, 11 Ala. 295 ; *Anderson* v. *Hooks*, 9 Ala. 704.

3. As to the complainant's interest in the drug store, she could only obtain adequate relief in equity. The levy on her interest, as the property of her husband, did not affect the interest of Cary, the other partner, nor injure him in any legal way ; nor was any injury done to the partnership, for which a joint action could be maintained. She could not bring detinue, because she did not have the entire interest. 1 Brickell's Digest, 572, § 6. She could not sue in trespass, for the same reason. 1 Chitty's Pl. 65–6. Her only remedy was an action on the case, or trover after the sale ; neither of which would have afforded adequate redress. *Waters* v. *Taylor*, 2 Vesey & B. 299 ; *Winston* v. *Ewing*, 1 Ala. 129 ; *Moore & Co.* v. *Sample*, 3 Ala. 319 ; *Andrews* v. *Keith*, 34 Ala. 722. As to this property, then, chancery has jurisdiction to prevent irreparable mischief. *Teague* v. *Russell*, 2 Stew. 420 ; *Smith* v. *Pearson*, 24 Ala. 355 ; *Kirksey* v. *Fike*, 27 Ala. 383 ; *Burden* v. *Stein*, 27 Ala. 104.

4. As to the stock in the Red Mountain Iron and Coal Company, no injunction was asked or granted ; though the bill sets up a claim to it, and the chancellor sustained the claim. If the jurisdiction of the court should fail as to this, the bill would not be multifarious on account of its insertion. *Carpenter* v. *Hall*, 18 Ala. 439 ; *Juzan* v. *Toulmin*, 9 Ala. 602. Besides, the peculiar nature of the property presents cogent reasons for the interposition of equity. Under the statute (Rev. Code, § 1783), stock in an incorporated company, sold and conveyed by the sheriff, becomes the property of the purchaser ; it stands in his name on the books of the corporation, and the legal title is in him. A resort to a court of chancery would be necessary, no matter how wrong the seizure, to vacate the transfer, and reëstablish the owner's rights ; and when this is the case, the court will interfere to prevent the wrongful divestiture of title. If the name of the corporation in this case does not sufficiently indicate that it is based on land, to prevent a cloud on which equity will always interfere, still the stock is but an incorporeal interest, or chose in action, as to which an action at law would not afford adequate relief.

5. There are many cases in which, under peculiar circumstances, chancery will interfere to prevent a cloud on the title, to avoid multiplicity of suits, or to prevent irreparable mischief, although the property is personal. Such were the cases of *Smith* v. *Pearson*, 24 Ala. 355; *Ala. Life Insurance & Trust Company* v. *Pettway*, 24 Ala. 544.

6. The complainant's claim against her husband, on which her decree was based under which she purchased his lands at execution sale, comprised the following items, which were ascertained and settled after contest before the register: 1st, damage by removal of her houses, $5,100; 2d, sale of the two lots in which her husband had a life estate, $4,500; 3d, sale of slaves Allen and Polly, $2,100; 4th, amount of decree on final settlement of Mrs. Taliaferro's estate, $1,198.44. As to the first of these items, it is shown that the houses were removed under a verbal agreement by Dr. Jones to erect others in their stead; an agreement which he has not complied with, and which he cannot comply with. If this agreement was valid and binding, the complainant's claim for damages on account of its breach would be the value of the houses agreed to be built, which is about twice the amount of her recovery. If invalid, the removal was unauthorized, and she had a right to recover the damage thereby done to her property; and being a married woman, she could only maintain a suit against her husband in equity. *Allen* v. *Booker*, 2 Stew. 21; *Madden* v. *Smith*, 3 Stew. 119; *White* v. *Wood*, 15 Ala. 358; 1 Brick. Digest, tit. *Equity*, §§ 34–36. That the agreement was within the statute of frauds, and therefore void, see *Riddle* v. *Brown*, 20 Ala. 412; *Freeland* v. *Southworth*, 24 Wendell, 191; 7 How. Miss. 421.

As to the second item: The sale of the real estate, in which Dr. Jones had a life estate as tenant by the curtesy, did not vest in him the absolute ownership of the proceeds. To so hold would leave the wife exposed to all the restraints, social, moral, and physical, which the common law imposed on the wife, and which our statutes were intended to remove. *Sessions* v. *Sessions*, 33 Ala. 522; *Marsh* v. *Marsh*, 43 Ala. 681; Bright on Husband & Wife, vol. 1, 113, 179. See, also, as to the effect of these statutes, *Wilkinson* v. *Cheatham*, 45 Ala. 341; *Nunn* v. *Givhan*, 45 Ala. 375; *O'Neal* v. *Robinson*, 45 Ala. 527; *Stone & Matthews* v. *Gazzam*, 46 Ala. 269.

As to the third and fourth items: If these items accrued to the complainant from her mother's estate, as we contend, they accrued in 1855–9, and are a part of her statutory separate estate; if from her father's estate, as contended by appellants, they do not belong to her statutory separate estate. The appellants' argument, on this point, is founded on a miscon-

[Brevard's Executors *v.* Jones.]

struction of David M. Taliaferro's will. The will clearly gives the widow an absolute interest in a child's part of the personal property, and a life estate in certain realty. Any other construction would be unnatural, would leave a child's part of the personal property undisposed of, and would impute to the testator the singular freak of offering his wife a pecuniary inducement to marry again. But, even if this unnatural construction were placed on the will, and Mrs. Taliaferro held to take a life estate only in the personal property, it would not follow that this property did not come from her to the complainant. She inherited property from her father, and she had a life estate in lands during her long widowhood, a period of thirty-one years; and from these sources, during this long period, she might have saved and accumulated more than the complainant ever received from her or her estate. No matter how the property was accumulated, or from what source, it was sufficient to show, as was shown, that she had property, to which no one else asserted any claim, and that she gave it to the complainant, her daughter.

7. The *bona fides* of the complainant's claim against her husband being thus established, and proved a second time in this suit, because the former decree was not conclusive on Brevard's executors, who were not parties to the first suit; the complainant might lawfully sue, and recover judgment against her husband, and sell his property under her execution, although she may have known that the effect would be to leave his other debts unpaid. There is nothing unlawful in such a transaction. It is only when the intent reaches beyond a desire to collect a just debt, and covers a corrupt design to hinder, delay, or defraud other creditors, that the law condemns the transaction. If this were not so, the vigilant creditor, in cases of doubtful solvency, would always lose his debt in the effort to collect it. *Young* v. *Dumas*, 39 Ala. 60; *Troy* v. *Smith & Shields*, 33 Ala. 469; *Anderson* v. *Hooks*, 9 Ala. 704–12; *Stover* v. *Harrington*, 7 Ala. 142; *Wilson* v. *Sheppard*, 28 Ala. 673; 24 Ala. 566; *Halbird* v. *Anderson*, 5 T. R. 235; 8 Metc. 411; 3 Johns. Ch. 446; 2 Ib. 283. The record does not sustain the assertions, charged as circumstances against the fairness of the decree and sale, that Dr. Jones employed the counsel to file the bill against himself, and that he paid them for their services. The proof is, that he spoke to counsel at the request of his wife, and retained them only in her behalf; and that payment was made to them in the drug store (in which his wife was a partner, and in which he had no interest), partly in medicines, and partly in money that was there. This court will not presume fraud, against the decision of the chancellor, unless the evidence is strong and decisive.

8. The irregularities in the executions and sale under them involve several distinct questions, to wit: —

*First. As to the delay beyond twelve months in the issue of execution.* This is a mere irregularity, of which no one but the defendant can complain. *Collingsworth* v. *Horn*, 4 Stew. & P. 237; *Boren* v. *McGehee*, 6 Porter, 432; *Fournier* v. *Curry*, 4 Ala. 321; *Pollard* v. *Cocke*, 19 Ala. 188; *Jackson* v. *Bartlette*, 8 Johns. 36; *Snipes* v. *Sheriff*, 1 Bay, 292; *Patrick* v. *Johnson*, 1 Lev. 404; Cro. Eliz. 188; *Jackson* v. *Robbins*, 16 Johns. 537; 3 How. Miss. 66; *Woodcock* v. *Bennett*, 1 Cowen, 311–34; *Dawson* v. *Shepherd*, 4 Dev. 497; 3 Barb. Ch. 184; 2 Strob. 207; 1 Carter, Indiana, 427; *Hancock* v. *Metz*, 15 Texas, 205; 16 Wis. 465. That the same rule applies, although the plaintiff in execution is the purchaser, see *Mitchell* v. *Evans*, 5 How. Miss. 548; 6 Humph. 281; 1 J. J. Mar. 217; 2 Bibb, 202; 5 Texas, 290; 9 Sm. & Mar. 216; 10 Ib. 246; 14 Md. 121; 11 Penn. St. 19; 2 Florida, 429.

*Second. As to the delay in the issue of executions, considered as a badge of fraud.* The delay is proved to have been, not the fault of the complainant or her counsel, nor caused by any act of theirs, but simply an act of omission by the register, for which the complainant is not responsible, and which cannot prejudice her rights. *Taylor* v. *Daniel*, 9 B. Monroe, 53; *Benjamin* v. *Smith*, 12 Wendell, 404; 7 Halst. 285. The court will take judicial notice of the fact, in this connection, that General Meade's military order was in force during the entire year 1868, forbidding the levy and sale of property under execution; and thus account for one half of the delay.

*Third. How are executions from the chancery court, for the collection of money, required to be made returnable?* For the collections of judgments at common law, and for the enforcement of decrees in chancery, two systems, widely different, are provided in the Revised Code. The former system, commencing with section 2837, and including section 2853, is found in that part of the Code, which, as this court has decided, does not apply to any courts except those of common law jurisdiction. *Forrester* v. *Forrester*, 35 Ala. 594; *Ex parte Kirtland*, at the June term, 1873. The other system is found in sections 3468–83, and is complete in itself. Section 3480, though a later statute than section 3478, does not repeal it, since the two may stand together, and repeals by implication are not favored. Sedgwick on Stat. & Const. Law, 123, and notes; *George* v. *Skeates & Co.* 19 Ala. 738; *Rawles* v. *Kennedy*, 23 Ala. 240. The object of the act of 1860, now sections 3479–80, was not to affect the return of executions, but to give to money decrees the effect of judgments, so as to allow execu-

tions in common form to issue for balances, in suits to foreclose mortgages, and to enforce vendors' liens, instead of driving the party to an action at law for its recovery. The construction contended for by the appellants would lead to this singular result: on decrees to foreclose mortgages, to enforce vendors' liens, and on all money decrees where an account is taken between the parties, the execution would be returnable to the next term of the court; while, on decrees to enforce any other liens, and on money decrees where the amount was ascertained by the chancellor without an account being taken between the parties, and on decrees to obtain the possession of lands or personal property, the execution would be returnable to "the first Monday in some month, to be specified in the writ."

*Fourth. As to the alteration of the return day of the executions.* The testimony shows how this was done, and relieves the complainant of all connection with it. The executions were never returned, in fact or in law, until after the lands were sold. An execution is not returned until the statutory directions have been complied with, and the writ has been delivered to the clerk or register as returned. Until they are returned, executions do not become records. *Harrell* v. *Martin, Pleasants & Co.* 6 Ala. 587; *Woodward* v. *Harbin,* 1 Ala. 104. To have that effect, they must be returnable according to law. *Hardy* v. *Gascoigne,* 6 Porter, 447; 13 Pick. 477; 27 Miss. 469; *Creagh* v. *Savage,* 14 Ala. 454. The issue of executions is purely ministerial, and may be done by deputy, or even by an agent. *McMahon* v. *Colclough,* 2 Ala. 68; *Kyle* v. *Evans,* 3 Ala. 481; 10 Johns. 404. The failure to specify in the writ when it is returnable, is a mere irregularity. *Wofford* v. *Robinson,* 7 Ala. 489; *Samples* v. *Walker,* 9 Ala. 726. Neither such failure, nor any other amendable error, renders the execution void. *Brown* v. *Hart,* 31 Ala. 146; *Deloach* v. *State Bank,* 27 Ala. 437; *Chambers* v. *Stone,* 9 Ala. 260; *Thompson* v. *Bondurant,* 15 Ala. 346; *McCullom* v. *Hubbert,* 13 Ala. 282. Irregularities in executions do not avoid sales made under them. Authorities *supra;* also, *Landers* v. *Perkins,* 12 Mo. 238; *Doe* v. *Hamilton,* 23 Miss. 496; *Reed* v. *Austin,* 9 Mo. 713; *Wells* v. *Griffin,* 2 Head, Tenn. R. 568; *Commonwealth* v. *Lehr,* 13 Penn. St. 22; *Daviess* v. *Womack,* 8 B. Monroe, 336; 4 Gilm. 336; 16 Iowa, 10; 18 Wis. 560; 2 Jones's Law, 63. Palpable irregularities in the frame of executions, under our decisions, neither justify the sheriff in refusing to execute or return them, nor avoid sales made under them. *Chambers* v. *Stone,* 9 Ala. 260; *Samples* v. *Walker,* 9 Ala. 726; *Brown* v. *Hart,* 31 Ala. 146; *Couch* v. *Atkinson,* 32 Ala. 633. Very liberal intendments

are indulged in favor of executions, after sales made under them. *Landes* v. *Brant*, 10 How. U. S. 348; 6 Jones's Law, 520; 4 Green (Iowa), 455; 2 Cowen, 454; *Shepherd* v. *Mobley*, 12 Ala. 561. If there be no fraud or unfairness in the sale, the same intendments are indulged when the plaintiff in execution becomes the purchaser. *Ingram* v. *Beck*, 2 Strob. 207. Whenever the sheriff, if sued in trespass, can justify under the process, his sale will convey the title. *Jeanes* v. *Wilkins*, 1 Vesey Sr. 195; *Blaine* v. *Charles Carter*, 4 Cranch, 333.

Sales under executions, made on the return day, are good, and pass the title. *Prescott* v. *Wright*, 6 Mass. 20; *Vail* v. *Lewis*, 4 Johns. 450; *Chase* v. *Gilman*, 3 Shep. 64; *Den* v. *Gaskins*, 1 Dev. 295. The sale in this case was made on the return day of the execution. Our decisions, holding sales void when made on the first day of the court to which the execution is returnable, are not in conflict with this principle, because the return day of the writ, in all those cases, was three days before the first day of the court.

As showing that the sheriff may justify under an execution, which has been altered by the clerk, and that a sale under it will pass the title, the following cases are directly in point. *Pierce* v. *Hubbard*, 10 Johns. 404; *Atkinson* v. *Gutcher*, 23 Ark. 101; *Roberts* v. *Church*, 17 Conn. 142; *Gage* v. *Barnes*, 11 Vermont, 195; *Clendenin* v. *Allen*, 4 N. H. 386; *Plumer* v. *Fogg*, 18 N. H. 559; *Faris* v. *The State*, 3 Ohio St. 159; *Sawyer* v. *Doane*, 19 Vermont, 598; 13 Johns. 158; 18 Johns. 3; 1 Wendell, 551; 4 Wendell, 512; 6 Wendell, 663; 2 Cowen, 454; 7 Cowen, 310; 2 Hill, 329; 15 Barbour, 604; 2 Hawk. 54; 3 Hawk. 463. All these cases, except those from New York, are uninfluenced by statute; and the cases cited on the other side, when critically examined, will be found not in conflict with them.

9. It is shown that Dr. Jones received and used $1,000, which Mrs. Taliaferro had given to his wife, and which did not enter into her decree against him. Whether, when the Red Mountain stock was put in her name, it was understood or intended as a payment of this particular debt, is immaterial. If he directed the application to that particular debt, he had the right to do so; and if he failed to direct the application, she might lawfully apply it. *Robinson* v. *Allison*, 36 Ala. 525. Even if there had been no application or election as to the payment, the complainant has the legal title, and at least an equal (if not a superior) equity to the defendants.

10. The interest in the drug store was purchased with money which Dr. Jones paid to his wife on account of the rents and profits of the property conveyed by him, in 1849, to Mrs.

Taliaferro as trustee, which he had received and used. The value of these rents and profits is shown to have been about $20,000; the entire amount paid by Dr. Jones on account of them, in October or November, 1866, was $6,000; and of this sum, which Mrs. Jones returned to him, with a request that he would invest it for her, $3,500 was invested in the drug store. At common law, which merged the person of the wife, civilly, in that of her husband, and allowed her to make no contracts, these rents and profits would be deemed a gift to the husband, and his payment to her on account of them would be held voluntary. *Roper* v. *Roper*, 29 Ala. 247. This presumption would be indulged against the wife, although nothing was said or done to indicate such an intention on her part; a most unnatural presumption, when we consider her weakness and utter inability to resist him. But this theory of the common law, with its incidents, has been swept away by advancing civilization. " The statute has removed the merger, and restored the wife to a capacity to receive and own estates as fully as though she were a *feme sole*." *Stone & Matthews* v. *Gazzam*, 46 Ala. 275; *Wilkinson* v. *Cheatham*, 45 Ala. 340; *Goree* v. *Walthall*, 44 Ala. 161; *King* v. *Seals*, 45 Ala. 418; *Glenn* v. *Glenn*, at January term, 1872. If Mrs. Jones had been a stranger, and had allowed Dr. Jones thus to receive and use her property, nothing being said as to the terms, the law would have implied a promise on his part to pay for it. The payment so made by Dr. Jones, on account of these rents and profits, was both a promise and its performance, and the law will sanction it as supported by a sufficient consideration. Chitty on Contracts, 47–8; 1 Parsons on Contracts, 360.

B. F. SAFFOLD, J. — In 1854, B. C. Jones became the administrator, in Alabama, of the estate of E. A. Brevard, a resident citizen of North Carolina, who left there a will, of which the appellants were the appointed executors. On the 29th of May, 1869, these executors, on a bill filed in Montgomery county in 1860, against Jones and his sureties, for the settlement of his ancillary administration, recovered a decree for a large sum against the sureties and his administrator, he having died after the commencement of the suit. An execution on this decree was levied on certain lands, an undivided half interest in a stock of drugs, &c., and one hundred shares of stock in the Red Mountain Iron & Coal Company, as the property of B. R. Jones, one of the sureties. The appellee, his wife, claimed the property as her own, and not subject to the payment of the debt for which the levy was made. By this bill she obtained an injunction against the sale, and a decree declaring her title.

[Brevard's Executors v. Jones.]

The appellee's claim rests upon the following facts: In January, 1867, she recovered against her husband, B. R. Jones, a decree in equity for $9,098.44, and a further sum of $4,500. Two executions were issued on the decree, both dated December 18, 1868, and returnable by their terms on the first Monday in June, 1869. They were levied on the lands in controversy, as the property of the husband, and said lands sold by the sheriff, on the return day of the executions, for $13,800, Mrs. Jones becoming the purchaser. The proceeds were applied in full satisfaction to the larger debt, and in part to the other. A conveyance was made by the sheriff to the appellee as the purchaser. The shares of stock stood on the books of the company as originally issued to her. The half interest in the drug store was personal property, held by her under parol contract of partnership with Cary.

[1.] So far, the legal title to all of the property is vested in the appellee. There seems to be no interest of B. R. Jones, subject to sale under the execution of the appellants, and, consequently, no necessity for her resort to equity. But it is evident, from facts presently to be stated, that as soon as the sale under the appellants' execution should be effected, the appellee would be liable, for a time limited only by the statute of limitations, to assault by the purchaser, claiming whatever interest in the property he might be able to show existed in B. R. Jones. As the decree of January, 1867, would not be conclusive against the assailant, the contest would involve transactions of husband and wife, and rights of property, perhaps, only sustainable in equity.

[2.] Mrs. Jones, the appellee, was married in 1841, when the law gave to her husband absolutely whatever of personalty she possessed, with the right to reduce to possession such as had not been received; and, in her real estate, a life interest, as tenant by curtesy, after issue born; all of which could be sold away from her, for the payment of his debts. But the real estate remained the property of the wife, unless both of them converted it into personalty; and on the death of the wife, whether before or after the death of the husband, it descended to her heirs. *Bibb* v. *McKinley et al.* 9 Porter, 636; *Nunn* v. *Givhan*, 45 Ala. 370.

Between the years 1855 and 1858, the appellee and her husband sold two parcels of land, one of which was given to her by her mother, Mrs. Taliaferro, in 1843, and the other descended to her previously from her father. For the first, $2,000 were obtained, and for the other $2,500. The money was appropriated by the husband to his own uses. The laws protecting the estates of married women certainly fastened on to these lands, to the extent of securing to the wife whatever interest

[Brevard's Executors v. Jones.]

she had in them at the date of their passage. They may not have divested the husband of any right which he had previously acquired by his marriage, and was in the enjoyment of. When the sale was made, some years after their passage, the husband could not have taken the proceeds as personalty. That belonged to the wife, as did the lands. Whatever change or alteration of right was effected in the property by its conversion into money, must be held to have enured to the benefit of the wife.

In *Sessions* v. *Sessions*, 33 Ala. 522, it was said, that the sale operated as a conversion of the realty into personalty, which, as *new property*, became her separate estate by virtue of the Code, § 1982 (R. C. § 2371). Even if it were practicable to trace the husband's marital right to the *use* of this property, through its transformation, it is inexpedient and inequitable to do so against the wife, in favor of creditors of the husband, whose claim accrued after the enactment of the statutes referred to, which made so radical a change in the law. It was within the authority of the legislature to exempt the rents, income, and profits of the wife's property from the payment of the husband's debts, while permitting to him the enjoyment of them ; and this, I think, the law has done. At any rate, real and personal property are subject to the laws which govern them respectively, and may be converted by the owners from one into the other before the rights of others have attached.

[3.] In 1849, B. R. Jones conveyed to Mrs. Taliaferro, in trust for his wife and children, several lots of land in the city of Montgomery, and a considerable amount of personal property. Mrs. Taliaferro was a naked trustee, holding the legal title merely. In equity, Mrs. Jones and her children were the owners as well as the beneficiaries of the property. Her interest, which was a life estate, was subject to the act of 1848 for the protection of the estates of married women, to the exclusion of her husband's creditors, in any respect not protected by the deed. The conveyance is to the trustee, in trust " for the said Frances Amelia Jones during the term of her natural life," &c., " not in any event to be subject to the debts, contracts, liabilities, or forfeitures of the said Benjamin Rush Jones," &c. The " married woman's law " operates on all the property or interest of the wife, except so far as the terms upon which she obtains it require the application of a different rule. Where the contract is silent, the law must govern. *Molton* v. *Martin*, 43 Ala. 651.

[4.] Upon one or more of the above mentioned lots there were buildings, which B. R. Jones removed, and placed on a lot belonging to himself. The removal was made with the understanding between him and his wife, that they were to be

replaced with others of more value. This precludes the idea of a gift of her own or any larger interest to him. The damage thus done to the realty, the houses not having been built, was estimated in the decree of 1867 at $6,000.

[5.] In 1855, the appellee received from her mother two slaves, Allen and Polly, which her husband sold for $2,100. Afterwards, on the final settlement of her mother's estate, she became entitled to $1,198.44. These two sums of money her husband appropriated to his own use. It is claimed for the appellants, that the property and money so received were but the accretions of property left to the mother for her life only, with remainder to her children, by the will of David Taliaferro, her husband ; and, consequently, that as a vested remainder, and by virtue of the possession of the tenant for life, B. R. Jones had acquired actual possession. Without discussing the correctness of the sequence, it is sufficient to say, that the fair interpretation of David Taliaferro's will gives to his wife an absolute title to her portion of his personal property. He directs the keeping of his property together, under the control and management of his wife and his executors, until the coming of age or marriage of the eldest child, who was then to receive an equal portion according to the number of children surviving, counting their mother as entitled to a child's part. The portion of the eldest, so ascertained, was to be the standard of distribution amongst the younger children respectively, as they married or came of age. But, if his wife should marry again, her interest might be withdrawn on that event, and, perhaps, the keeping together abandoned as to the children's shares. He then devises to his wife a life estate in the land on which he was residing. His appropriation of $5,000 out of the profits of his property for the benefit of his son William Benjamin no more affected the tenure of Mrs. Taliaferro's estate than it did the children's.

All of the property above described, to wit, the two parcels of land converted into personal property, the damages on account of the removal of the houses, the two slaves, and the distributive share in Mrs. Taliaferro's estate, aggregating in value about $13,798, clearly belonged to the appellee, as her separate statutory estate, and was not subject to the payment of her husband's debts. It was so decreed by the chancery court in 1867, and the land in controversy was sold under the judgment then rendered, and purchased by the appellee in satisfaction of it.

[6.] In 1854, the appellee received from her mother $1,000, which her husband also appropriated. In 1867, he supplied her with that amount, with which she purchased or paid for the stock in the Iron & Coal Company. He had previously,

[Brevard's Executors *v.* Jones.]

in 1862, subscribed for stock in the company, but had not paid for any portion of it. In 1867, the company reorganized its affairs, and offered to its subscribers a certain amount of stock at a specified price, in lieu of the former subscriptions. The appellee complied with the terms in respect to her husband's subscription, and received the certificate and stock in her own name. This was a legitimate investment of so much of her statutory estate.

[7.] In 1866, her husband gave her $3,500, with which she purchased the half interest in the drug store. She claims that this money was the profits of the property conveyed by him in 1849 for the benefit of herself and her children. The appellants insist that, as she had a life estate in all of that property, and her husband was not accountable to her for the profits, his gift to her in 1866 was in fraud of the rights of his creditors.

The identical profits of the wife's separate statutory estate do not belong to the husband. If he misapply them, so that she is deprived of proper maintenance, he will be removed from the trusteeship, and the control of the property, with its rents, issues, and profits, will be given to her. R. C. §§ 2383, 2384. They are not subject to the payment of his debts. R. C. § 2372. If he should invest them in her name, or for her account, such investment would be her property. Must he, in making the investment, use the identical profits? If he were to buy a tract of land for himself, and one for his wife, for cash, and pay for his own with her money, and for hers with his money, would both parcels be his, without regard to his intention? If so, then circumstances of indifference may overrule reason.

A person may sell his own property *bonâ fide*, or make a simulated sale of it, before his creditor obtains a lien. In the first case, he will defeat his creditor of the property. In the other, he will fail on account of his fraud. If he restore to his wife property for that of hers which he had taken, and which was not his, nor subject to his debts, is there no consideration for it, because he is not accountable to her, and husband and wife cannot contract with each other? He is not forbidden to account to her, and he need not contract with her. Restitution is not alone of the specific thing, but it may be of something else. The creditor's ground of complaint, in such case, is not the restitution, but some imposition practised upon him, whereby he was induced to give the credit, or is withheld from collecting his demand. In short, the creditor is not injured, if the husband honestly restores to his wife what he had taken from her. The rule is the same as between other persons, if he chooses to account. The justice of it is shown in the fact,

that by refusing to account he may subject the *corpus* of her estate to sale for the necessary support of the family.

[8.] No executions were issued on the decrees of January 6, 1867, in favor of the appellee against her husband, until after the expiration of a year and a day. When issued, on the 18th of December, 1868, they were made returnable on the first Monday in March, 1869. The sheriff having failed to take any action by that time, the register's clerk who had issued the executions, a few days after the return day, erased the word " March," and substituted " April ; " and in like manner he afterwards erased " April," and substituted " June." On this last return day, the sale was made. The executions were not at any time formally returned by the sheriff, but on account of his failure to enforce them, the register's clerk, on his request, extended the return day.

The statute very explicitly declares, that " no execution shall issue on a judgment or decree of the circuit, chancery, or probate court, on which an execution has not been sued out within one year after its rendition, until the same has been revived by *scire facias,* " &c. R. C. § 2820. The Code of 1852 was to the same effect in respect to judgments of the circuit court. Code, § 2419. The law previously, as far back as 1807, *allowed* execution on the judgment of any court of record, *within the year*. In 1835, the legislature, because doubts had arisen whether a *scire facias* would lie on a judgment where execution had not issued within the year and day, enacted that the plaintiff should have it. Clay's Dig. 199, § 1 ; 207, § 29. If it was doubtful whether a *scire facias* would lie, it must have been certain that an execution could not have issued. Under these older laws, this court has held, that executions issued after the year and day were not void, but voidable at the option of the defendant alone, unless other persons had in the mean time acquired rights. *Collingsworth* v. *Horn*, 4 S. & P. 237 ; *Boren* v. *McGehee*, 6 Port. 432 ; *Fournier* v. *Curry*, 4 Ala. 321 ; *Jackson* v. *Bartlett*, 8 Johns. 361 ; *Pollard* v. *Cocke*, 19 Ala. 188. It can make no difference if the plaintiff in execution is the purchaser, because the question is not one of notice, but of the *status* of the execution.

[9.] The effect of the alterations of the return day is fully contained in the inquiry, whether the executions, when they were issued, might have been made returnable on the first Monday in June, 1869. If they could have been so made, they appeared on the face to be valid and operative at the time of the sale. In a collateral proceeding, the purchaser may rely on the judgment, execution thereon, levy, and sheriff's deed. *Ware* v. *Bradford*, 2 Ala. 676. The erasures and interlineations were not, of themselves, sufficient to vitiate the executions ;

and their explanation rested solely on the parol testimony of the register's clerk and the sheriff. Even on a direct proceeding to quash the executions, a harmless explanation, such as, that the register wrote " March " and " April " by mistake and erased them, and substituted " June " before issuing them, would not have shown irregularity. *Harrell* v. *Martin, Pleasants & Co.* 6 Ala. 587.

[10.] Writs from the court of chancery, for the collection of money, are to be made returnable on the first Monday of a month, to be specified in the writ. R. C. § 3478. " In all cases where an account is taken between the parties, and the amount of indebtedness between them ascertained by the decree of such chancery court, such decrees shall have the force and effect of judgments, and executions thereon may be issued by the registers," which " shall have the force and effect of executions issued from the circuit courts, and shall be *levied, collected, and returned in the same manner.*" R. C. §§ 3479, 3480. The varied relief which the chancery court is authorized to give, presents a reason why its process for the collection of money should not be so strictly confined as in the courts of law. The collection of money is rather an adjunct to its jurisdiction, which must often yield to its main purpose. For instance, it would formerly foreclose a mortgage, or enforce a vendor's lien, by a sale of the property, leaving any balance due to the complainant to be recovered by him in an action of law; but for the sake of convenience, and to prevent a multiplicity of suits, it may now, under the authority of statutes, render judgment and enforce its collection by execution.

The retention in the Revised Code of section 3478, which was anterior to section 3480, makes it our duty to give effect to it, if practicable, not inconsistent with a just interpretation of the latter. An execution levied, collected, and returned, is the work of the sheriff. He must *return* it at the time specified in the writ, whether that be a particular day, or simply " according to law." *Forward* v. *Marsh,* 18 Ala. 645. Section 3480, in respect to the return, is a direction to the sheriff, who has no discretion in the matter. Neither the law court, nor its clerk, is given any discretion about the return day of an execution issued from it. But the court of chancery, as a court of relief, must be allowed more latitude. On a decree for the foreclosure of a mortgage, or the enforcement of an equitable lien, the property must be sold, and the sale confirmed, and the balance due ascertained by the decree of the court, before an execution can issue. R. C. § 3479. This will take time, and equitable time should be given, which may extend beyond the next term of the court. Therefore was the return day left discretionary with the court, or the register, except that it must

[Dorsey v. Dumas's Heirs.]

be on the first Monday of a month. The lien and priority of such executions, if the return day is unreasonably postponed, are not involved in this case. The appellants had acquired no rights between the teste and the return day; and as many of our chancery courts are held only once a year, a postponement less than one year would not be an unreasonable length of time.

The decree is affirmed.