## HALL, MOSES & ROBERTS *vs.* HEYDON.

[GARNISHMENT ON JUDGMENT.]

1. *Validity of mortgage as against creditors.*—A mortgage, which is execu-
ted with the avowed intent on the part of the mortgagor to prevent a
levy on the property by his judgment creditors, and accepted by the
mortgagee with knowledge of that intent, and which purports to secure
a debt partly simulated, is fraudulent and void as against creditors.

2. *Liability of trustee or mortgagee as garnishee.*—Section 2523 of the Code,
relative to the liability of trustees to process of garnishment, equally
applies to mortgagees with power of sale; and under its provisions, if
such trustee or mortgagee is guilty of actual fraud, (as by accepting the
deed with knowledge of a fraudulent intent on the part of the grantor
or mortgagor,) he cannot, as against an attaching creditor, retain out
of the assets the amount of a debt due to himself.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. JOHN K. HENRY.

THE appllellants in this case recovered a judgment against
Mary Keiffer, at the October term of said circuit court,
1857, for five hundred and thirty-eight 21-100 dollars dam-
ages, besides costs; and an execution on this judgment
having been returned "no property found," they sued out
process of garnishment on the 2d March, 1859, and sum-
moned James Heydon as the debtor of said Mary Keiffer.
The garnishee appeared, and, at the April term, 1861, an-
swered orally, in open court, as follows: "In 1855, or 1856,
said defendant owed him two or three hundred dollars, for
groceries previously sold her, and a note for three hundred
dollars, given for the hire of a slave, to work in a black-
smith-shop, which was carried on by the defendant; and
he was surety for her on another note for about three hun-
dred dollars, to one Thomas M. Williams, for the hire of
another slave to work in the same shop. He took posses-
sion of said blacksmith-shop, with the consent of said de-
fendant, in January or February of the same year, and
carried on the same with the work of said slaves during

said year, and received the proceeds thereof; out of which'
at the end of the year, said two notes were paid, and can-
celled.   In the same year, and after he took said shop under
his control, the defendant came to him, and told him that
she wanted to make him a mortgage upon a house and lot,
which she owned, in the village where they both lived, worth
one thousand or fifteen hundred dollars, for the purpose of
preventing some of her execution creditors from levying
their executions on it, and subjecting it to the payment of
their debts.   Said garnishee further stated, that he expected
said defendant would purchase other groceries from him,
and had in anticipation the securing of such other pur-
chases, and expected to secure them by the execution of
said proposed mortgage, and agreed to take the mortgage;
that said defendant then executed to him a note for ——
dollars, and gave him a mortgage to secure the same, and
he took said mortgage for the purpose of securing said
debts; that after said mortgage was made, and during said
year, he furnished additional groceries to the defendant, to
an amount more than sufficient, after deducting all credits
of the defendant, to cover the consideration expressed in
said mortgage, a part of which consisted of supplies for
said slaves, who were kept at the defendant's house, he
furnishing a woman to cook for them; that the amount of
groceries furnished, after deducting for said negroes, was
more than the amount expressed in said mortgage; that
some time after the law-day of said mortgage, and before
the service of the garnishment in this cause, he sold said
house and lot under said mortgage, and bid in the same at
the sale, for the sum of five or six hundred dollars, he could
not remember which.

   " This was all the answer of the garnishee.   The evidence
further showed, that said house and lot were subsequently
sold, under a decree in chancery, at the suit of Barney &
Brothers; and that said defendant is now living there.   It
was admitted, that the plaintiffs' debt was contracted on the
28th March, 1855; on which suit was brought on the 24th
September, 1857, and judgment rendered at the fall term
of said court, 1857."   A copy of the mortgage is set out in
the bill of exceptions; but it is not stated to have been

read in evidence, or made part of the garnishee's answer. The mortgage is dated the 10th October, 1855 ; purports to be given to secure the payment of a note for five hundred dollars, of even date with it, and due the 1st January, 1856 ; and contains a power of sale on default being made in the payment of the note at maturity.

" The plaintiffs moved the court for a judgment against said garnishee—1st, for the amount of their judgment aforesaid, with costs of suit ; 2d, for the amount for which said house and lot were bid in by said garnishee, at his sale under said mortgage ; and, 3d, for the amount for which said house and lot were bid in by said garnishee, less the amount of the defendant's debt to the garnishee at the execution of said mortgage which was unpaid at the time of the sale." The court refused each of these motions successively, and discharged the garnishee ; to which several rulings and decisions exceptions were reserved by the plaintiffs, and they are now assigned as error.

WATTS & TROY, for appellants.
J. F. CLEMENTS, contra.

A. J. WALKER, C. J.—The mortgage executed by Mary Keiffer, the judgment debtor of the appellants, to the defendant in garnishment, was fraudulent. The defendant in the judgment was indebted to the garnishee, in the sum of two or three hundred dollars, for groceries, and in a note for three hundred dollars ; and the garnishee was surety for such defendant, on a note for about three hundred dollars. During the year 1855, the two notes above named were paid off by the income of the defendant's blacksmith-shop, which the garnishee received ; and at the end of the year the two notes were cancelled. In October of the same year, the defendant informed the garnishee, that she desired to make to him a mortgage on her house and lot, worth $1,000 or $1,500, for the purpose of preventing some execution creditors of herself from levying their executions upon such house and lot, and subjecting the same to the payment of their debts. The garnishee assented to the proposition ; and a note for five hundred dollars was executed

to him by the defendant; and a mortgage, with a power of sale, to secure the payment of the note was given. The garnishee answers, that he expected, when he took the mortgage, to sell groceries to the defendant, and that the payment for them would be secured by the mortgage. The mortgage, however, is not given to secure any prospective debt, and is given alone for the security of the payment of a subsisting note of five hundred dollars. Neither the note for three hundred dollars, held by the garnishee on the defendant, nor the note on which he was surety for her, was secured by the mortgage; and they were paid, as above stated, from the income of the blacksmith-shop. The only debt for the security of which the mortgage was given, was the debt of two or three hundred dollars, for groceries. It follows, that the note for five hundred dollars was in part a simulated debt. The mortgage was made by the mortgagor to prevent the collection of her debts out of her property. This fraudulent purpose was communicated to the garnishee, who agreed to take it, knowing the purpose of its execution; and besides, the garnishee became a party to an arrangement, by which a note, simulated as to a part of its amount, was drawn and secured by the mortgage. We cannot hesitate to decide, without looking farther, that the mortgage was made to hinder, delay, and defraud creditors. There was, therefore, within the meaning of section 2523 of the Code, " actual fraud," as defined in the case of *Price v. Masterson*, 35 Ala. 483. We must further decide, that the garnishee was guilty of the actual fraud; for it is correctly held, in the same case, that the mortgagee who takes a mortgage, knowing of the mortgagor's fraudulent intent, is a participant in the fraud.

[2.] It is held in *Price v. Masterson, supra*, that the provisions of section 2523 of the Code, although mentioning only trustees, apply to mortgagees with a power of sale. It is further held, in the same case, that such a mortgagee, the mortgage being in fact fraudulent, if himself guilty of actual fraud, cannot retain, from the proceeds of the sale of the mortgaged property, a debt due to himself, as against the mortgagor's creditor, who has sued out process of garnishment against him.

It results from what we have said, that the court below erred in discharging the garnishee, and ought to have rendered a judgment against him for the entire amount at which he sold the mortgaged property.

Reversed and remanded.

JUDGE, J., not sitting, having been of counsel.