# Coleman *v.* Smith.

# Smith *v.* McQueen *et al.*

*Bill in Equity for Injunction of Mortgage Sale, and Account and Settlement of Trust Deed ; Cross Bill for Account and Foreclosure of Mortgage.*

1. *Homestead exemption ; alienation by mortgage.*—When the wife joins with her husband in a mortgage of the homestead, and the certificate of acknowl-

[Coleman v. Smith ; Smith v. McQueen et al.]

edgment is in the proper form (Rev. Code, § 1548), she can not avoid its effect by simply showing that she signed it reluctantly, and after great hesitation; especially where it is not shown that the mortgagee used or connived at the employment of any influences to procure her signature. If there was no coercion, and no false or fraudulent representations were made to procure her signature, her act is in law "voluntary," notwithstanding such reluctance and hesitation.

2. *Who is purchaser for valuable consideration.*—When a mortgage is given to secure a debt presently contracted, or contracted on the faith and promise that it should be given, the mortgagee is a *bona fide* purchaser for valuable consideration, and, as such, is entitled to protection against equities of which he had no notice.

3. *Conversion by husband, of moneys belonging to wife's statutory estate ; validity of mortgage to secure such debt.*—If the husband converts to his own use moneys belonging to the *corpus* of his wife's statutory separate estate, he becomes her debtor to the amount of the money thus converted; and he may, in the absence of fraud, secure the debt so created, as he might any other debt, by a mortgage of property to a trustee for her use.

4. *Validity of conveyance to secure existing debt.*—The validity of a mortgage, or deed of trust, given to secure an existing debt, is not affected by a fraudulent intent on the part of the debtor, in which the creditor and trustee did not participate, and of which they had no knowledge.

5. *Contracts between husband and wife, as to statutory separate estate.*—The husband can not, by any contract with his wife, or with another person for her benefit, convert her statutory separate estate into an equitable separate estate (Rev. Code, § 2374); and if he conveys property by mortgage or deed of trust, to secure a debt due to her for moneys belonging to the *corpus* of her estate, which he has converted, the character of her estate is not thereby changed, but the property so conveyed becomes a part of her statutory separate estate.

6. *Mortgage of wife's statutory separate estate, to secure husband's debt.*—If the wife joins with her husband in the execution of a note, given for his debt, and also in a mortgage to secure it, on property which he has already conveyed to a trustee to secure a debt due to her statutory separate estate, the note and mortgage are mere nullities as to her, and can not operate as a waiver of her prior rights to the property.

7. *Rents of mortgaged property, and injunction to stay waste ; rights and liabilities of several mortgagees between themselves.*—As against the mortgagor, either the first or a subsequent mortgagee may claim the rents of the mortgaged property, and may by injunction stay the commission of waste ; consequently, the junior mortgagee can not complain of the senior mortgagee's failure to exercise these rights, nor charge him with damages on account of such failure.

8. *Application of partial payment.*—When partial payments are made on a debt past due (Rev. Code, § 1830), they should be applied first to the extinguishment of the accrued interest, and only the residue be applied to the principal.

9. *Advancements ; when brought into hotchpot.*—In the settlement of a decedent's estate, where there is a will disposing of the entire estate, advancements received from the testator should not be charged against a distributee, unless the will so directs ; but the appellate court can not, in the absence of all averment and proof as to the contents of the will, presume that such charge was erroneously made.

10. *Confirmation of register's report in vacation.*—It is error to confirm the register's report in vacation, except by consent of the parties.

APPEAL from the Chancery Court of Autauga.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 23d January, 1873, by James D. McQueen and Mrs. Elizabeth S. Coleman, the wife of Stephen W. Coleman, who sued by her next friend and brother, the said James D. McQueen, against the

(25)

said Stephen W. Coleman, William D. Smith, and W. J.
Boon, the sheriff of said county; and sought to enjoin and ·
restrain the said W. D. Smith from selling certain lands
under a mortgage executed to him by the said Stephen W.
and Elizabeth S. Coleman, and also to enjoin the further
prosecution of a suit in detinue, which the said W. D. Smith
had instituted against said Stephen W. Coleman and his
wife, to recover several mules and other personal property
conveyed by said mortgage; and it also sought an account
and foreclosure of a deed of trust, executed by said Stephen
W. Coleman, prior to said mortgage to W. D. Smith, convey-
ing the said lands and personal property to the said James
D. McQueen as trustee, to secure a debt alleged to be due
from said Stephen W. Coleman to his wife, on account of
moneys belonging to her statutory separate estate, which he
had received and converted to his own use.

The deed of trust from Coleman to McQueen was dated
the 16th January, 1868, and filed in the office of the probate
judge for record on the 27th January, 1868.   It recites, as its
consideration, that the said Coleman had received thirty-five
hundred dollars belonging to his wife's statutory separate
estate—that is, five hundred dollars, in 1855, from the estate
of James McLemore, and three thousand dollars, in 1860,
from the estate of John McQueen, who was the father of
Mrs. Coleman—which he had appropriated and converted to
his own use, and the payment of which he desired to secure;
and it was conditioned to be void, if he paid the said moneys
to said James D. McQueen, as trustee, on or before the 1st
day of January, 1869, but was to remain in full force and
effect until the said debt was paid.   The mortgage by Cole-
man and wife to W. D. Smith, which is dated the 17th April,
1871, purports to be given to secure a promissory note for
$5,032.21, executed by said Coleman and wife, of even date
with the mortgage, and payable on the 1st January, 1872;
and it authorizes the mortgagee to take possession of the
property conveyed, on default being made in the payment of
the secured debt, and to sell the same after twenty days' no-
tice.   It was acknowledged by the said Coleman and wife,
on the 28th April, 1871, before D. B. Booth, as clerk of the
Supreme Court; the certificate of acknowledgment being in
the form prescribed by the statute for the acknowledgment
of conveyances.—Rev. Code, § 1548.   The bill alleged that
the note, which the mortgage to Smith was given to secure,
was the individual debt of said Stephen W. Coleman alone;
that the said Elizabeth S. Coleman signed the note only as
surety for her husband; and that she did not sign the mort-
gage voluntarily, but was induced to sign it by the earnest

and persistent solicitations of her husband, who was at the time greatly embarrassed in his pecuniary circumstances, and was threatened with a criminal prosecution by the said W. D. Smith, if he did not procure her signature to the note and mortgage. It alleged, also, that of the money received by said Stephen W. Coleman, belonging to his wife's statutory estate, he had spent twelve hundred dollars in erecting a house and other improvements on the lands conveyed by the mortgage and deed of trust; and asserted a lien on the lands for that amount, in favor of Mrs. Coleman.

The bill was sworn to by said Stephen W. Coleman, *one of the defendants,* who swore "that the facts and statements therein set forth, when made upon the personal knowledge of the complainants, are correct and true, and, when made upon information and belief, he believes to be true;" and an injunction was awarded, on the filing of the bill, by Hon. CHARLES PELHAM, judge of the tenth judicial circuit. A decree *pro confesso* was taken against S. W. Coleman, and also against the sheriff. W. D. Smith answered the bill, admitting, on information and belief, that said S. W. Coleman had received moneys belonging to his wife's statutory estate, but denying all knowledge of the amount so received, and of the uses to which it was applied, and requiring strict proof of the averments of the bill as to these facts; admitting, also, the execution of the deed of trust to McQueen, but denying that it was executed for the purposes alleged in the bill, and averring that it was executed by said S. W. Coleman for the purpose of hindering, delaying, and defrauding his creditors; and that this was known to his wife, and to the said Mc-Queen, before and at the time the deed was executed. He alleged that his note and mortgage were given to secure a debt for money loaned; that the lands conveyed by it were only a part of the lands conveyed by the deed to McQueen, several portions having been sold by the said Coleman and wife to other persons after the execution of the deed to Mc-Queen, and the purchase-money received by them on these sales being more than enough to pay the debt, if any existed, from said Coleman to his wife. He alleged that said Coleman and his wife had continued in the use and occupation of the lands, on which a saw and grist mill was erected, and, with the assent and concurrence of McQueen, had received the rents and profits, and had cut and sold timber, enough in value to pay whatever debt might be due from him to his wife. He denied all knowledge or information as to the means used by the said S. W. Coleman to induce his wife to sign the said note and mortgage, but admitted that he at that time threatened to institute a criminal prosecution

against said Coleman for having destroyed another mortgage on the same property, and given to secure the same debt, which respondent had returned to him in order that he might correct a mistake in the description of the land; and he insisted that Mrs. Coleman, by joining with her husband in the execution of the note and mortgage to him, had waived in his favor whatever prior rights she might have under the deed to McQueen. He asked that his answer might be taken and treated as a cross bill against Coleman and his wife and McQueen, and prayed for an account and foreclosure of his mortgage, the cancellation of the deed to McQueen as a cloud on his title, an injunction, the appointment of a receiver, and general relief. The injunction was granted, and the receiver was appointed.

On final hearing, on pleadings and proof, the chancellor held—1st, that the deed to McQueen was a valid conveyance, to the extent of the moneys received and used by Coleman, belonging to his wife's statutory estate, and the property conveyed by it, or the proceeds of its sale under the decree, became her statutory separate estate; 2d, that Mrs. Coleman, by joining with her husband in the note and mortgage to Smith, did not thereby waive her prior rights under the deed to McQueen, said note and mortgage being inoperative as against her separate estate; 3d, that the mortgage to Smith was a valid alienation of the homestead exemption, and a valid lien on the property after the satisfaction of the debt due to Mrs. Coleman; 4th, that Smith was entitled to protection, as a *bona fide* purchaser for valuable consideration without notice, against Mrs. Coleman's claim for moneys used by her husband in the erection of valuable improvements on the lands; 5th, that Mrs. Coleman was not chargeable with waste committed on the lands by her husband, nor on account of the rents and profits received and used by him. He therefore perpetuated the injunction on the original bill, and ordered a reference to the register, as master, to state an account of the debt due to Smith under his mortgage, of which he decreed a foreclosure as prayed in the cross bill; and on the coming in of the register's report, which was confirmed in vacation, against the objections of the defendant Smith, he ordered a sale of the property, directing that the debt to Mrs. Coleman ($3,500) should be first paid out of the proceeds, and the residue appropriated to the debt due to Smith, which was ascertained to be $3,799.38.

From this decree both parties appeal, and here assign errors. The errors assigned by Mrs. Coleman are: 1. That the chancellor erred in holding the mortgage to be a valid

[Coleman v. Smith ; Smith v. McQueen et al.]

alienation of the homestead, and in not excepting the homestead from the decree of sale. 2. In not allowing Mrs. Coleman's claim for twelve hundred dollars expended by her husband in the erection of improvements on the land. The errors assigned by Smith are: 1. That the chancellor erred in perpetuating the injunction against him. 2. In allowing Mrs. Coleman a prior lien on the land. 3. In refusing to charge Mrs. Coleman with the lands sold and conveyed by her and her husband after the execution of the deed to McQueen. 4. In refusing to charge her with rents and profits of the land, and with the value of the timber cut and sold by her husband. 5. In confirming the register's report in vacation. 6. In overruling his exceptions to the register's report on account of his computation of interest.

DOSTER & ABNEY, with whom were RICE, JONES & WILEY, for Mrs. Coleman.—1. By the conversion and misappropriation by the husband of moneys belonging to his wife's statutory separate estate, he became her debtor to that amount, and might lawfully convey property to a trustee to secure such indebtedness; and such property thereby becomes a part of her statutory separate estate.—*Rowland v. Plummer*, 50 Ala. 182; *Davidson v. Lanier*, 51 Ala. 318; *Barclay v. Plant*, 50 Ala. 515; *Ellett v. Wade*, 47 Ala. 456; *Bunkley v. Lynch*, 47 Ala. 210.

2. As against Mrs. Coleman and her separate estate, the mortgage and note to Smith are absolutely void.—*Bibb v. Pope*, 43 Ala. 190; *Wilkinson v. Cheatham*, 45 Ala. 337; *Davidson v. Lanier*, 51 Ala. 318.

3. As an alienation of the homestead, the mortgage to Smith is void, because, as the evidence shows, it was not executed by Mrs. Coleman freely and voluntarily. The certificate of acknowledgment only creates a presumption as to this fact, which is overcome by the evidence.—*Pryor v. Beck*, 21 Ala. 393; *Marsh v. Br. Bank*, 10 Ala. 57; *Jenkins v. McConico*, 26 Ala. 213.

4. Mrs. Coleman was not chargeable with rents and profits, not being in possession of the property.—*Davenport v. Bartlett & Waring*, 9 Ala. 119. Nor could she be charged with waste committed by her husband. As to the moneys received on the sales of land by her and her husband, the evidence shows that these moneys were not received by her or her trustee, but were paid over to Smith on his debt.

5. Mrs. Coleman ought to have been allowed a lien on the land, for moneys belonging to her statutory estate, which her husband used in erecting valuable improvements.—Brightly's Federal Digest, 841, §§ 52-55.

W. H. & W. T. NORTHINGTON, with WATTS & WATTS, for W. D. Smith.—1. As to the claim of homestead: The certificate of the officer before whom the acknowledgment was made, as to the execution of the mortgage, is in proper form, and states that the mortgage was voluntarily executed by the parties; and this is the highest and best evidence of the fact, and must be deemed conclusive, unless some fraud or deception was practiced in procuring the acknowledgment, in which the officer himself participated. Public policy, and the security of titles to land, alike demand this rule. The evidence here only shows reluctance and hesitation on the part of the wife, but utterly fails to show force, duress, fraud, or other improper influence; and it is entirely immaterial what motives, outside of these, influenced the wife to sign the deed. Moreover, Coleman had parted with the legal title to the mortgaged lands, by the deed of trust formerly executed to McQueen, and nothing remained in him but an equity of redemption; while Mrs. Coleman had a mere chattel interest therein, holding it as security for her debt, and is trying in this suit to subject it to her debt. These facts show a waiver of the claim to a homestead exemption, if any existed.

2. The lands in question formed no part of Mrs. Coleman's statutory estate. She merely held them as a pledge or security for her debt, and had a right to waive or release her interest. There can be no valid reason why a married woman, owning a statutory separate estate, may not waive or release a security for a debt due to it. By joining with her husband in the note and mortgage to Smith, she must be held to have waived or released whatever prior rights she may have had in the lands.

3. As Smith had no notice, when he took his mortgage, of Mrs. Coleman's claim for moneys alleged to have been invested by her husband in improvements on the land, his rights cannot be affected by it. He is entitled to protection as a purchaser for valuable consideration without notice.— *Wells v. Morrow*, 38 Ala. 126; 3 Amer. Ch. Digest, 69; *St. Andrews Church v. Tompkins*, 7 John. Ch.

4. A mortgagor has no right to cut timber on the mortgaged lands, and may be restrained from doing so by injunction.—2 Story's Equity, § 1016. As to the right of subsequent incumbrancers to have a receiver appointed, see 2 Story's Equity, § 837. If the prior mortgagee permit the mortgagor to remain in possession after the law-day, he cannot recover interest, as against a subsequent mortgagee, without accounting for the rents.—*Penrhyn v. Hayes*, 5 Vesey, 99. If a mortgagee releases property, to the prejudice of a

subsequent mortgagee, equity will compel him to account for it.—*Blair v. Ward*, 2 Stock. N. J. 119 ; *McLean v. LaFayette Bank*, 3 McLean, 389 ; *Johnson v. Rice*, 8 Greenl. 157. These authorities show that Coleman and his wife are liable to account, as in favor of Smith, for the rents of the lands, the value of the portions sold, and the value of the timber cut and sold.—See, also, *Kellogg v. Rockwell*, 19 Conn. 446 ; 1 Lomax's Digest, 331.

5. Coleman was not indebted to his wife on account of his own receipts, which he took from the executors of her father, John McQueen, in part payment of his wife's distributive share of her father's estate. These receipts were given for advancements made to him by the testator in his life-time, and were not mentioned in his will. Advancements are only required to be brought into hotchpot in cases of intestacy.— Rev. Code, § 1898; *Greene's Executors v. Speer*, 37 Ala. 532.

STONE, J.—Only two questions are raised by the assignments of error by Mrs. Coleman. First, the claim of homestead. Mrs. Coleman united with her husband in the execution of the mortgage to Wm. D. Smith, and the certificate of the acknowledgment of the mortgage is, in form, strictly according to the statute.—Revised Code, § 1548. It is contended, however, that, although signed and acknowledged by Mrs. Coleman, yet the mortgage was not, in fact, executed with her "voluntary signature and assent." Four witnesses were examined on this disputed question. The substance of the testimony certainly is, that Mrs. Coleman hesitated before executing the mortgage, and at last signed it reluctantly. Still, there was no coercion, no subjugation of her will, and no false or fraudulent representations made to her, by which she was induced to join in the conveyance. Especially is there an entire absence of proof that Mr. Smith procured or connived at the employment of any influences, designed or calculated to procure her signature. True, she was persuaded by her husband, and probably by others ; but, when she came to act, she did it freely, without being impelled thereto by fraud or duress. She freely elected to execute the mortgage, possibly under the conviction that Mr. Smith ought to be made secure, and partly, no doubt, as a means of averting a calamity then impending over her husband. Human actions are rarely impelled by isolated motives. We often find ourselves in a dilemma, to extricate ourselves from which we must elect between two confessed evils. Left entirely free, we would prefer neither ; but, being compelled to take one or the other, we naturally choose that which we deem least hurtful. In thus choosing, we give our voluntary

assent, in the strict and legal meaning of the term.    We hold that the proof in this record fails to show a case of coercion, or fraud, that invalidates the mortgage of the homestead. See *Miller v. Marx*, at the present term.

2. It is contended, in the second place, that twelve hundred dollars, the statutory separate estate of Mrs. Coleman, was expended by her husband in improvements on the lands mortgaged, and that this sum should be declared a lien in equity on the lands, paramount to the mortgage interest secured to Mr. Smith.    This relief was denied by the Chancery Court, on the ground that Mr. Smith stood' in the category of a purchaser, and that when he took the mortgage, he had no notice, so far as the record disclosed, of this equity of Mrs. Coleman.    If the mortgage was taken to secure a debt presently contracted, or contracted on the faith and promise that such mortgage security should be given, then the ruling of the court was unquestionably correct.    The testimony does not clearly show when, or on what assurances, if any, the debt to Smith was contracted.    Possibly, the chancellor was justified in inferring from it that the making of the mortgage was but the consummation of an agreement, made at the time of the loan, that Smith should be thus secured.    This would clearly bring this case within the rule ; and we can not find enough in this record to justify us in ruling that the chancellor, in this respect, committed an error.—See *Wells v. Morrow*, 38 Ala. 126.

Another view of this question, however, shows conclusively that the chancellor ruled correctly, when he disallowed this claim.    The largest sum of Mrs. Coleman's money, used and converted by her husband, which the testimony authorizes us to find, is about $3,800.    Of this sum, only a part was expended on the lands in controversy.    We have no authority for finding that as much as $3,500 of it was thus used.    By a deed of trust, older than the mortgage to Smith, conveying the same lands described in the mortgage, Mr. Coleman secured to his wife $3,500 of this sum of $3,800.    This leaves unsecured only $300 of the entire sum thus converted by him. The chancellor, by his decree, has declared, in favor of Mrs. Coleman, a lien on all the lands, for the payment of said thirty-five hundred dollars, paramount to the mortgage lien of Mr. Smith.    We think this secures to her a lien upon the land for a much larger part of her money than was expended in improving it ; and that she has no equity to go against the land for the remaining three hundred dollars.

3. On the cross appeal by Smith, the assignments of error question several rulings of the chancellor in the decree ren-

dered on the original and cross bills, which were heard together, and on the same testimony. It is contended, in the first place, that Mrs. Coleman, by the execution, with her husband, of the note and mortgage to Smith, thereby waived her prior right and lien on the lands, secured by the deed of trust of Coleman to McQueen, trustee, and conveyed to Smith a paramount lien and right to have his claim made a first charge on the lands.

If it were even an open question of fact, uninfluenced by the finding of the chancellor, we think, on the testimony in this record, we would be forced to find that, between 1854 and 1861, Mr. Coleman, the husband of Mrs. Coleman, received, used and converted, of the statutory separate estate of Mrs. Coleman, a sum exceeding thirty-five hundred dollars. So, when Coleman, in 1868, made a deed of trust to McQueen, trustee, to secure Mrs. Coleman to the extent of thirty-five hundred dollars due her, he left an unsecured residuum of debt to her, of two or three hundred dollars. This was principal, or *corpus*, of her statutory separate estate, without any interest thereon. Coleman, then, as trustee, owed his wife, as beneficiary, a sum at least equal to the sum secured by the mortgage. To this extent, she was his creditor, and he had the right to secure her by deed of trust, if there was no fraud in the transaction.—*Barclay v. Plant*, 50 Ala. 515 ; *Harris v. Brown*, 30 Ala. 401 ; *Goree v. Walthall*, 44 Ala. 161 ; *Stone v. Gazzam*, 46 Ala. 269 ; *Brevard v. Jones*, 50 Ala. 221.

4. The record does not inform us that Coleman then owed any other debt. The only testimony, assailing the *bona fides* of this trust deed, is that of Smith and one other witness, who testify that Coleman told them that the deed to McQueen, for the use of Mrs. Coleman, was made to keep the distributees of his father's estate off him until he could make some settlement with them. Coleman, in effect, admits that he made some such statement as this. But this was done when neither Mrs. Coleman nor her trustee was present. If it be conceded that this convicts Mr. Coleman of a fraudulent intent in making the trust deed, it does not affect or impair the rights of Mrs. Coleman under the deed; for she and her trustee both testify, that they heard of no such intention ; and there is no testimony in the record, conveying such knowledge to them.—*Stover v. Herrington*, 7 Ala. 143 ; *Anderson v. Hooks*, 9 Ala. 704 ; *Goodgame v. Cole*, 12 Ala. 77 ; *Borland v. Mayo*, 8 Ala. 104 ; *Townsend v. Harwell*, 18 Ala. 301 ; *Hall v. Heyden*, 41 Ala. 242.

5. The money of Mrs. Coleman, converted by her husband, being her statutory separate estate, by no contract with her, or with another for her benefit, could he convert it into an

equitable separate estate, or an estate made separate by contract.—Revised Code, § 2374; *Reel v. Overall*, 39 Ala. 138; *Molton v. Martin*, 43 Ala. 651; *Brevard v. Jones*, 50 Ala. 221; *Barclay v. Plant*, 50 Ala. 516. It results, that the debt due to her, and the mortgage security for its payment, were her statutory separate estate, when she, with her husband, executed the note and mortgage to Mr. Smith.

6. The debt to Smith was in no sense the debt of Mrs. Coleman. It was the debt, and only the debt of her husband. She had not the power, or legal capacity, to bind herself personally for its payment, or to make it a charge upon her statutory separate estate. From anything appearing in this record, her name on the note and mortgage were, and are, for such purpose, simply void acts.—*Bibb v. Pope*, 43 Ala. 90; *Wilkinson v. Cheatham*, 45 Ala. 337; *Northington v. Faber*, 52 Ala. 45. This last case is almost precisely like the present one.—See, also, *Warfield v. Ravesies*, 30 Ala. 518. The distinction between this case and that of *McMillan v. Peacock*, recently decided, is precisely the difference between statutory separate estates, and equitable estates of married women. The former she can not charge, save as the statute expressly authorizes. The latter she can, and does charge, by all her contracts and agreements, which, entered into by one *sui juris*, would bind him personally.

7. There is nothing in this case which requires or authorizes us to charge Mrs. Coleman with the rents of the property, or with the waste committed. Either mortgagee, as against Mr. Coleman, had the right to claim the rents of the property. Between themselves, Mrs. Coleman's right was first in time, and, therefore, prior in right. So, either mortgagee had the right to interpose, and, by injunction, arrest the commission of waste.—See 2 Brick. Dig. 253, § 72; p. 254, §§ 83, 84, 85, 88; *Welch v. Phillips*, in manuscript; *Lyon v. Hunt*, 11 Ala. 295. We are not aware of any rule of law, which arms the junior mortgagee with the power to charge the senior mortgagee with laches, and a pecuniary mulct, on account of the failure of the latter to possess herself of the rents, and to arrest the waste. It was as much the duty of Mr. Smith to move in this matter, as it was of Mrs. Coleman.

All the interest which Mrs. Coleman owned in said lands being her statutory separate estate, it follows that her attempt to mortgage it to secure a debt of her husband is inoperative.—*Northington v. Faber, supra*.

8. The chancellor having decreed to complainant only the *corpus* (or principal) of the debt due to her from her husband, no question can arise as to the application of rents and profits to the interest accruing on the mortgage debt. The

[McConnaughy v. Baxter.]

register, in ascertaining the amount due to Mr. Smith, committed an error in the manner of computing interest.—See Revised Code, § 1830. When partial payments were made, such payments should have been applied, first, to the extinguishment of the interest then accrued, and only the balance or remainder placed as a credit on the principal. The exceptions to his report, however, do not raise this question. 1 Brick. Dig. 770, §§ 1930, 1931, 1935, 1936.

9. It is contended that, inasmuch as Mr. McQueen, father of the complainant, died testate, the advancement made to her, or to her husband, before Mr. McQueen's death, should not have been brought into hotchpot, and should not have been charged against her in distribution. Such should have been the case, if the will made complete disposition of the estate, and made no provision for such charge. The pleadings, however, make no mention of the will, or of its provisions. It is only once mentioned in the record—in J. D. McQueen's testimony—and none of its provisions are stated. In the final distribution of the estate, advancements were charged against other legatees or distributees, as well as Mrs. Coleman. In the absence of averments in pleading, and of all proof as to the contents of the will, we are not authorized to presume that the will was of such character as to forbid the charge of advancements against the legatees. We rather infer that the will required such charge to be made.

10. On a single question, the chancellor erred. He should not, without consent of the parties, have confirmed the report of the register in vacation. In this case, there was not only no consent that the report should be then acted upon by the court, but the solicitor expressly objected to, and protested against such action.

For this error, the decrees of the Chancery Court, rendered after the register made his report, must be reversed, and the cause remanded. On the appeal by Mrs. Coleman, the decree of the chancellor is affirmed.