# Worrell & Wife *v.* McDonald.

*Bill in Equity for Foreclosure of Mortgage; Cross-Bill for Cancellation.*

1. *Alienation of homestead; wife's voluntary signature and assent.*—*Held*, on the authority of *Coleman v. Smith* (55 Ala. 368), and *Miller v. Marx* (*Ib.* 322–40), that the evidence adduced as to the circumstances under which a mortgage of the homestead was executed by husband and wife, the certificate of the notary public as to its acknowledgment being in legal form, "fails to produce a satisfactory conviction that the chancellor erred in holding the intendments arising from the notary's certificate not overcome."

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 15th January, 1878, by Joseph B. McDonald and George W. Gunn, against Thomas J. Worrell and his wife, Mrs. Cynthia A. Worrell; and sought the foreclosure of a mortgage on a tract of land, executed by the defendants to the complainants jointly, a copy of which was made an exhibit to the bill. The mortgage was dated the 20th November, 1874, and was given to secure the payment of two promissory notes, of even date with the mortgage, for $200 each, payable on the 1st November, 1875, one to McDonald, and the other to Gunn; was signed by said Worrell and wife, and attested by "A. McGehee, notary public;" and to it were appended two certificates by said McGehee as notary, as to its execution and acknowledgment by the mortgagors. As to the acknowledgment by said Worrell, the certificate of the notary was in the usual form; and as to its acknowledgment by Mrs. Worrell, his certificate was in these words: "I, A. McGehee, notary public in and for said county, hereby certify, that on the 20th day of November, 1874, came before me the within named Cynthia Ann Worrell, known, or made known to me, to be the wife of the within named Thomas J. Worrell; who, being by me examined separate and apart from her husband, touching the signature to the within mortgage, acknowledged that she signed the same, of her own free will and accord, and without fear, constraint, or persuasion of her husband. In witness whereof," &c.

The defendants filed separate answers, which were substantially the same. They admitted their signatures to the mortgage, but denied its validity; alleged that it was given to secure the two notes therein described, and that the consideration of the notes had failed; that they were given in consideration of professional services to be rendered by the payees, as attorneys at law, in defending said Worrell against a criminal prosecution for murder, and procuring his release or pardon in the event of conviction, and that the services were not rendered as stipulated; alleged, also, that the mortgage embraced the homestead on which they resided, and that it was not acknowledged before an officer authorized to take and certify such acknowledgment, McGehee's term of office as notary having previously expired; that it was signed by Mrs. Worrell, not freely and voluntarily, but under the undue influence and persuasion of her husband, her son, and said McDonald, who refused to undertake the defense of her husband unless she signed it; that she signed it in the presence of her husband, and was not examined by the no-

tary, separate and apart from her husband, touching her signature to the same ; and they asked that their answers might be taken and considered as a cross-bill, and that the mortgage of the homestead might be cancelled and set aside on the grounds stated.

It was proved that the notes and mortgage were signed on the day of their date, while the parties were together in a room in the court-house ; the parties present being said Worrell and wife, McDonald and McGehee, the notary, and Worrell being then under indictment for murder. Mrs. Worrell, in her deposition, stated that her son *William* was also present, and urged her to sign the mortgage ; but John *W.* Worrell, whose deposition was taken on the part of the defendants, and who was their son, testified that he was not present at the time. The notary, McGehee, was not examined as a witness. The depositions of Worrell and wife were twice taken on their own behalf. In his first deposition, after stating the negotiations between himself and the complainants, Worrell thus testified as to the execution of the mortgage : "They then required a mortgage on my lands, to secure payment of said notes, and required my wife to sign the mortgage. She refused to sign the mortgage on her homestead, but was finally persuaded by her son, myself and McDonald, to sign it, which she did, and by my side, before one A. McGehee, supposed to be a notary public ; but she was not examined by him, on oath, touching her signature." In his second deposition he thus stated the facts : "Myself and wife, McDonald, my son William, and McGehee were in one of the jury-rooms in the court-house. Court was in session. I had just come out of the jail, under guard, into the court-house. Gunn told me to go into the room, that McDonald had the papers fixed. I signed the notes, and McDonald then handed me the mortgage ; said it was on all my land, 240 acres. I had never seen the mortgage, until presented by McDonald to be signed. I told him that I was not willing to give a mortgage on all my lands for that amount, but would give them a deed to eighty acres to defend my case. He then said that he would not defend the case without the mortgage on all ; that it was a very dangerous case ; that my life was at stake, and prejudice was against me ; that I had better employ counsel at once ; that the case would go to trial the next day, &c. This all occurred in the jury-room, in the court-house at Seale, where I was tried for my life. When the mortgage was handed to my wife to sign, she utterly refused, and said she could not sign away her homestead ; that if her husband should be taken from her, and she should lose her home, she would be ruined ; and she told

[Worrell & Wife v. McDonald.]

McDonald she would give him a deed for eighty acres to defend the case to the end. McDonald said he would not defend the case without the mortgage, and told her that she did not know as much as he did; that it was a bad case; that her husband's life was in danger, and she had better employ counsel at once. My son William then rose up, and said, '*Ma, you must sign it.*' McDonald said, '*Yes, madam, sign it; I never will push you; and if you don't sign it, I wont defend your husband.*' Then she signed it, but reluctantly."

Mrs. Worrell testified, in her first deposition: "When asked to sign said mortgage, I refused to do so, stating that I could not sign away my homestead; but I was finally persuaded to sign it, by my husband, my son William, and said McDonald. I signed it with great reluctance. It was in Major Waddell's office, in the court-house, when the notes were signed, on the 20th November, 1874." In her second deposition, she testified as follows: "Myself and husband, J. B. McDonald, and A. McGehee, notary public, were all that were in the room when the mortgage was signed. When I was asked to sign it, I refused, and told Col. McDonald I could not sign away my homestead; that if my husband was taken away from me, I would be brought to suffering, and that I would give him a deed to eighty acres of the land. He said he did not want the land; that he would not defend my husband, if I did not sign the mortgage; that I had better sign it; that it was a bad case. My son William said, '*Ma; you must sign it.*' McDonald said, '*Sign it; I will never push you.*' I was in so much trouble that I did not know what to do, and I signed it. McGehee, the notary public, never read the mortgage over to me, separate and apart, nor in the presence of my husband either; never examined me separate and apart from my husband, touching my signature; and I did not sign it with my own free will, but by persuasion of Col. McDonald and my son William. When I went to the notary, I did not know fully the nature of the instrument I signed. I had not been apprised of it before. McGehee or McDonald, one or both, said it was a mortgage. I signed what was said to be the mortgage, but very much against my will. I was excited, and persuaded to sign it by McDonald and my son."

McDonald, whose deposition was taken on behalf of the complainants, testified to the employment of himself and said Gunn to defend Worrell, the general facts connected with his defense and trial, and thus stated the circumstances attending the execution of the mortgage: "I drew up the notes and mortgage at the request of said Worrell and his wife. It was at the earnest solicitation of said Worrell and wife, and

the fullest assurances of good faith and promises to pay said notes, and of the great value of said lands mortgaged, that we consented to defend him in the case. The Circuit Court was then in session, and said transaction occurred in the office of J. F. Waddell, then county solicitor, in the court-house. She signed said mortgage freely, and of her own accord, or she so stated and insisted at the time. She was not in great distress, any more than a woman would ordinarily be whose husband was in jail under so serious a charge. She seemed very calm, but very anxious to get counsel to aid him in his case. Mr. McGehee read the said instrument to the parties, in my presence, and explained to them its meaning and purport. The reason of this was, that I mistrusted both of the parties, and did not want them to have any excuse that they did not know what it meant. I recollect distinctly that it was read over to her, both by Mr. McGehee and myself, and explained separately by each of us. I was present when she signed it, and so was her husband. The certificate of said McGehee speaks the truth. Mr. Worrell was taken out of the room, into the general court-room, while Mrs. Worrell was being examined by the notary, as to her signature to the mortgage; and she stated that she signed the same freely and voluntarily. I knew that I was dealing with a man in whom I had no confidence, and was therefore careful to have every letter of the law complied with."

On final hearing, on pleadings and proof, the chancellor dismissed the cross-bill, and rendered a decree foreclosing the mortgage, but without delivering any opinion, or assigning any reasons for his decree. The defendants appeal from this decree, and here assign each part of it as error.

NORMAN & WILSON, and J. M. RUSSELL, for appellants.

HOOPERS & WADDELL, contra.

STONE, J.—There is in fact but one question presented by this record, namely : Is it shown that the mortgage from Worrell and wife was executed with the voluntary signature and assent of the wife, as the law requires such act to be evidenced, in order to convey or charge the homestead? The certificate of the notary is in the precise form prescribed by the statute.—Act approved December 13th, 1873 ; Pamph. Acts, 53–4. The objection urged is, that Mrs. Worrell was unduly persuaded to execute the paper, and that McDonald, one of the complainants, united in such persuasion. The evidence offered in support of this objection is the testimony of Mr. and Mrs. Worrell. They were, each of them, twice

[Worrell & Wife v. McDonald.]

examined. In their second examinations they are much more elaborate than in the first, and some discrepancies, as well as contradictions by other of their own witnesses, might be pointed out, if deemed necessary. McDonald, in his testimony, fully contradicts all statements imputing improper influence exerted, and he is corroborated by many circumstances in evidence.

In *Coleman v. Smith*, 55 Ala. 368, this precise question was presented. We said : "The substance of the testimony certainly is, that Mrs. Coleman hesitated before executing the mortgage, and at last signed it reluctantly. Still, there was no coercion, no subjugation of her will, and no false or fraudulent representations made to her, by which she was induced to join in the conveyance. Especially is there an entire absence of proof that Mr. Smith procured or connived at the employment of any influence, designed or calculated to procure her signature. True, she was persuaded by her husband, and probably by others ; but, when she came to act, she did it freely, without being impelled thereto by fraud, or duress. She freely elected to execute the mortgage, possibly under the conviction that Mr. Smith ought to be made secure, and partly, no doubt, as a means of averting a calamity then impending over her husband. Human actions are rarely impelled by isolated motives. We often find ourselves in a dilemma, to extricate ourselves from which we must elect between two confessed evils. Left entirely free, we would prefer neither ; but being compelled to take one or the other, we naturally choose that which we deem least hurtful. In thus choosing, we give our voluntary assent, in the strict and legal meaning of the term."

In *Miller v. Marx*, 55 Ala. 322, 340, speaking of the measure of proof necessary to set aside a certificate, such as we are considering, we quoted from an opinion of the Supreme Court of Illinois, and adopted as our own the following language : "There must be some allegation of fraud, or imposition practiced towards her—some fraudulent combination between the parties interested and the officer taking the acknowledgment," to justify the court in setting aside such certificate.

Under these rules, the defendants, appellants here, have failed to produce on our minds a satisfactory conviction that the chancellor erred in holding that the intendments arising from the notary's certificate were not overcome. The cases of *Balkum v. Wood*, 58 Ala. 642, and *Barnett v. Proskauer*, 62 Ala. 486, are not opposed to this view.

Affirmed.